EUBERT GAYLE LLOYD, JR.,      )
                            )
      Petitioner,        )
                            )
    v.                 )       No. 4:07CV2060 FRB
                            )
MICHAEL BOWERSOX,         )
                            )
      Respondent.       )

## MEMORANDUM AND ORDER

Presently before the Court is the pro se petition of Missouri state prisoner Eubert Gayle Lloyd ("Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

## I. Procedural Background

On August 26, 2002, Petitioner was charged by Information in Crawford County, Missouri with manufacture of a controlled substance; specifically, producing more than five grams of marijuana. (Respondent's Exhibit ("Resp. Exh.") 3 at 19). The Information was subsequently amended to include the allegation that Petitioner was a prior offender. (Id. at 24). On August 26, 2004, following a jury trial, the jury found Petitioner guilty of producing a controlled substance. (Id. at 25, 42). The trial court sentenced Petitioner to a 30-year term of imprisonment.

(_Id._)

Petitioner filed an appeal in the Missouri Court of Appeals, alleging that the trial court erred when it: (1) ruled that Petitioner could not offer evidence regarding his arguments with his former wife and her son regarding marijuana, and regarding evidence that marijuana was discovered at his residence after his arrest; (2) failed to _sua_ _sponte_ remedy alleged prosecutorial misconduct during cross-examination and closing argument; (3) excluded evidence that other marijuana was discovered on Petitioner's property five months after he was arrested; and (4) denied petitioner's pre-trial motion to suppress all evidence seized by officers during the search of petitioner's property on June 21, 2002. (Resp. Exh. 4, 6; _State v. Lloyd_, 205 S.W.3d 893, 898 (Mo.Ct.App. 2006)). The Missouri Court of Appeals affirmed petitioner's conviction and sentence, (_Id._),[1] and issued its mandate on December 13, 2006. (Resp. Exh. 8).

Petitioner filed a motion for post-conviction relief in the trial court, which the court dismissed as untimely. (Resp. Exh. 9 at 11). Petitioner subsequently filed a notice of appeal, which the Missouri Court of Appeals denied as untimely. (_Id._ at 2).

---

[1]he Missouri Court of Appeals did, however, note that the written judgment contained a clerical error, inasmuch as it did not accurately reflect petitioner's status as a prior offender. _Lloyd_, 205 S.W.3d at 910. The Court of Appeals remanded the case to allow the lower court to correct the error. _Id._

In the instant Petition, Petitioner alleges four grounds for relief, and specifically,

> 1.    The trial court erred in (a) precluding Petitioner from testifying regarding the most significant information in his testimony about his ex-wife, and (b) preventing him from testifying about reporting marijuana at his home;
>
> 2.    Petitioner was denied a fair trial because of "extreme misconduct" that was allowed by the trial court, inasmuch as the prosecutor was allowed to imply that Petitioner committed a crime he did not commit;
>
> 3.    The trial court erred when it precluded petitioner from submitting evidence related to Petitioner's discovery of additional marijuana at his residence after he was arrested; and
>
> 4.    The trial court erred in denying petitioner's motion to suppress evidence obtained during an alleged illegal search upon his property.

(<u>Id.</u>)

Petitioner subsequently filed an amendment to his Petition. (Docket No. 4/filed January 2, 2008) ("Amendment"). Applying the prison mailbox rule, and giving Petitioner the benefit of the doubt, the undersigned determines that the Amendment was filed on December 26, 2007, the day Petitioner indicated that he placed it into the prison mail system. <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266 (1988).

In the Amendment, Petitioner alleges that:

1.   He is actually innocent of the charge of which he was convicted, and the state used illegally obtained evidence against him;

2.   The state failed to show sufficient evidence indicating that petitioner had any control or knowledge of the marijuana plants other than to show that petitioner had a criminal propensity based upon his prior convictions; and

3.   The fraudulent actions of the trial judge and prosecutor, and the ineffective assistance and fraudulent actions of Petitioner's trial and appellate counsel, resulted in the wrongful denial of Petitioner's post-conviction motion.

(Docket No. 4 at pages 1-5).

Petitioner also asks that this Court liberally construe his Petition; notes the date on which the Missouri Court of Appeals issued the mandate dismissing his post-conviction appeal; and states that the relief he seeks is necessary and proper. (Id. at 1-6).

## II.  <u>Statute of Limitations</u>

Respondent alleges that the Amendment is untimely, inasmuch as it was placed in the prison mail system more than one year after the Missouri Court of Appeals issued its mandate in Petitioner's direct appeal proceedings.[2]

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a federal habeas petition to be filed within one year after the petitioner's state conviction becomes final.  28

---

[2]The record demonstrates, and respondent acknowledges, that Petitioner's Petition (Docket No. 1) was timely filed.

-4-

U.S.C. § 2244(d)(1)(A).  The triggering date for the statute of limitations that is relevant to the case at bar is the later of the date when the judgment became final by the "conclusion of direct review" or "the expiration of the time for seeking such review." Id.

The Eighth Circuit has recognized that, in situations in which the U.S. Supreme Court would have had jurisdiction to review the petitioner's direct appeal, the "direct review" contemplated by §2244(d)(1)(A) encompasses review of a state conviction by the United States Supreme Court.  Riddle v. Kemna, 523 F.3d 850, 853 (8th Cir. 2008); see also Smith v. Bowersox, 159 F.3d 345, 347-48 (8th Cir. 1998).  In such cases, if the petitioner did not file a petition for writ of certiorari, his conviction becomes final when the time for filing that petition expires.  Riddle, 523 F.3d at 855.  If, however, the Supreme Court would have lacked jurisdiction to review the petitioner's direct appeal, the statute of limitations begins to run immediately following the conclusion of the petitioner's direct appeal.  Id.  In Missouri cases, the U.S. Supreme Court would lack jurisdiction over the petitioner's case if the petitioner failed to file a motion for discretionary review in the Missouri Supreme Court.  See Id.

In the case at bar, review of the docket sheet in Petitioner's direct appeal reveals that he did not seek review in the Missouri Supreme Court.  Therefore, because the United States Supreme Court would have lacked jurisdiction to review Petitioner's

-5-

direct appeal, the AEDPA statute of limitations began to run on the date the Missouri Court of Appeals issued its mandate in Petitioner's direct appeal on December 13, 2007. See Riddle, 523 F.3d at 855. Because Petitioner filed his amendment more than one year later, it is untimely under the AEDPA. 28 U.S.C. § 2244(d)(1)(A).

However, claims made in an untimely-filed amendment may be deemed timely if they relate back to a timely-filed motion (in this case, the original Petition) as allowed by Federal Rule of Civil Procedure 15(c). Mayle v. Felix, 545 U.S. 644, 664 (2005) (applying Rule 15(c) to a 28 U.S.C. § 2254 petition); see also Dodd v. U.S., 614 F.3d 512, 515 (8th Cir. 2010). Claims made in an amended motion relate back to the original motion when the amendment asserts a claim that arose out of the same "conduct, transaction or occurrence set out . . . in the original" motion. Fed.R.Civ.P. 15(c)(1)(B). In the habeas context, in order for a claim to arise out of the same conduct, transaction, or occurrence, the claims must be "tied to a common core of operative facts." Mayle, 545 U.S. at 664; see also Dodd, 614 F.3d at 515.

In the case at bar, Petitioner's claim related to the sufficiency of the evidence does not relate back to the original Petition because it is fully distinct from any of the claims Petitioner alleged in that original Petition. In his original Petition, Petitioner raised no claims related to the sufficiency of the evidence. Furthermore, in the Amendment, Petitioner does not

-6-

allege a core of operative facts to support this claim that is common to any of the claims he brought in his original Petition. Instead, the claim Petitioner makes in his Amendment alleges, in conclusory fashion, that the state failed to show sufficient evidence that Petitioner had control or knowledge of the marijuana plants, other than to show his past criminal propensity. There is no link between the claim in the Amendment and any of the claims in the original Petition sufficient to allow the undersigned to confidently say that the claim in the Amendment is tied to any claim in the original Petition by a "common core of operative facts." Mayle, 545 U.S. at 664. The undersigned therefore determines that the claim in the Amendment challenging the sufficiency of the evidence does not relate back to the original Petition, and it is therefore barred by the statute of limitations.

Nor does Petitioner's claim that the fraudulent actions of the trial judge and prosecutor, and the fraudulent actions and ineffective assistance of his trial and appellate counsel, caused his post-conviction proceedings to be wrongfully dismissed relate back to the original Petition. Again, there is no link between this claim and any of the claims from the original Petition sufficient to allow the undersigned to conclude that the claim relates back to the original Petition. The undersigned initially notes that Petitioner made no such claim in his original Petition. Furthermore, in his Amendment, Petitioner presents the claim in a conclusory fashion, offering no detailed facts in support, leaving

it entirely unclear exactly how Petitioner is suggesting he was precluded from timely filing his post-conviction proceedings by the allegedly fraudulent behavior and ineffective assistance of the individuals he implicates. Absent Petitioner's presentation of the operative facts supporting his claim, the undersigned cannot say with any confidence that the claim in the Amendment is tied to any claim in the original Petition by a "common core of operative facts." Id. The undersigned therefore determines that the claim does not relate back to the original Petition, and is barred by the statute of limitations.

Petitioner also alleges that he is actually innocent of the charges, stating that "the state government used an illegal search to obtain a search warrant to seize marijuana plants found in a wooded area on petitioner's property." Regardless of whether this claim relates back to any claim in the original Petition, the undersigned notes that claims of actual innocence are not cognizable in federal habeas corpus proceedings. Herrera v. Collins, 506 U.S. 390, 400 (1993); Burton v. Dormire, 295 F.3d 839 (8th Cir. 2002) (en banc). However, construing the Amendment liberally and giving Petitioner the benefit of the doubt, the undersigned will consider Petitioner's allegations, infra, in the context of whether Petitioner can successfully establish a "gateway" to obtain federal review of an otherwise procedurally barred claim.

### III.    Exhaustion and Procedural Default

Before this Court may grant relief on the merits of a petition for writ of habeas corpus, a petitioner must first exhaust his state law remedies. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The exhaustion requirement is satisfied if a petitioner has fairly presented his claims first in state court, or if there are no non-futile state remedies currently available to the petitioner. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). Review of the record reveals that all of the claims in the Petition are exhausted, inasmuch as Petitioner either raised them in state court, or there are no non-futile state remedies currently available to him. The undersigned further notes that respondent makes no argument that any of Petitioner's claims remain unexhausted.

To avoid procedural default, a petitioner must fairly present the substance of each claim asserted in the federal petition at each step of the judicial process in state court. Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (citing Benson v. State, 611 S.W.2d 538, 541 (Mo.Ct.App. 1980)); see also Wemark v. Iowa, 322 F.3d 1018, 1020-21 (8th Cir. 2003); Anderson v. Groose, 106 F.3d 242, 245 (8th Cir. 1997). The "fair presentation" requirement is satisfied when the petitioner has properly raised in the state courts the same factual grounds and legal theories he attempts to raise in federal court. Wemark, 322 F.3d at 1021.

A.   Grounds 1(b), 2 and 3

Regarding Petitioner's claims in Grounds 1(b), 2 and 3, review of the record shows that Petitioner fairly presented them to the Missouri state courts, where they were adjudicated on their merits. The undersigned also notes that Respondent herein does not allege that these claims are procedurally barred. The undersigned therefore concludes that Petitioner's claims in Grounds 1(b), 2 and 3 are properly before this Court.[3]

B.   Ground 1(a)

Petitioner's claim in Ground 1(a) however, is barred from review in this Court because the Missouri Court of Appeals, the last state court to hear the claim, rested its disposition of the claim upon an independent and adequate state procedural rule. In Ground 1(a), Petitioner claims that the trial court erroneously prohibited him from testifying about the problems he was having with his former wife and her son regarding marijuana.

"It is a basic doctrine of law that if a state court's resolution of an issue rests on a state law procedural ground that is "independent" of federal law and "adequate" to support the state court's judgment, a federal court will not review the issue in a habeas action." Grubbs v. Delo, 948 F.2d 1459, 1462 (8th Cir.

---

[3]The undersigned notes that the Missouri Court of Appeals reviewed the claim Petitioner presents in Ground 2 for plain error. This does not result in a procedural bar, James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999), and this Court will review Petitioner's claim for plain error. Roll v. Bowersox, 177 F.3d 697, 700 (8th Cir. 1999).

1991) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991) and <u>Harris v. Reed</u>, 489 U.S. 255 (1989); <u>see also</u> <u>White v. Bowersox</u>, 206 F.3d 776, 780 (8th Cir. 2000). A state procedural ground is "adequate" if it is based upon a procedural rule that is "strictly or regularly followed." <u>Johnson v. Mississippi</u>, 486 U.S. 578, 587 (1988) (citing <u>Barr v. City of Columbia</u>, 378 U.S. 146, 149 (1964)). In addition, the state court must have "clearly and expressly" stated that its judgment rested upon a state procedural bar. <u>Harris</u>, 489 U.S. at 263 (quoting <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 327 (1985)). When a petitioner's default is due to an "independent and adequate state procedural rule," a federal court can review the claim only if the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that the federal court's "failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 724; <u>see also</u> <u>Ivy v. Caspari</u>, 173 F.3d 1136, 1140 (8th Cir. 1999) (citations omitted) ("Federal review of a habeas corpus petition is barred when a state court dismisses or rejects a prisoner's claims on independent and adequate state grounds unless the petitioner establishes cause for the default and actual prejudice resulting from the alleged violations of federal law.")

In Ground 1(a) herein, Petitioner contends that the trial court prevented him from testifying about problems he was having with his former wife and her son regarding marijuana, based upon

the trial court's ruling on the State's motion in limine.[4] Petitioner presented this claim to the Missouri Court of Appeals. The Missouri Court of Appeals denied Petitioner's claim, noting that, because it was premised upon the denial of motions in limine, and the record failed to reveal that Petitioner had tried unsuccessfully to present such testimony during trial, Petitioner had failed to preserve anything for appellate review. More specifically, the state court ruled as follows:

> On the morning of trial, the trial court took up the State's motion in limine regarding "statements made by Defendant's to others that are exculpatory in nature." [sic] The motion has not been included in the record on appeal, but the court described the purpose of the motion in a docket entry. According to the court, Defendant intended to testify that: (1) he had argued with Sheena and D.J. about growing marijuana on the premises; and (2) he reported the discovery of additional marijuana plants in his house to the police five or six months after he was arrested. The trial court initially concluded that such statements were hearsay and did not fall within any exception that rendered them admissible.

> At the close of the State's evidence, defense counsel asked the court to reconsider its ruling on the motion in limine and asked to make an offer of proof. With respect to the first prong of the motion, counsel stated that:

>> [D]efendant would testify, if Your Honor permits, that he lived at the residence with Sheena Lloyd. That was the other person that was present at the time of the execution of the warrant, as well as her son, Mr. Lloyd's stepson, [D.J.] That throughout this period of time Mrs. Lloyd had spoken to him about raising marijuana, that she wanted to do it,

---

[4]The State's motion in limine also sought to exclude testimony regarding the discovery of marijuana at Petitioner's residence several months following his arrest. This point is addressed, supra.

that it would make money, in fact that she had previously done so on other occasions. And that Mr. Lloyd forbid her to do that and said he wanted nothing to do with that, that he did not want her having marijuana around in any way, shape or form.

Defense counsel then presented a second offer of proof (described above in our discussion of Point III, supra ) concerning the discovery of additional marijuana in Defendant's house five months after his arrest. The trial court adhered to its initial ruling regarding the second prong of the State's motion in limine. With respect to Defendant's statements to his spouse, however, the court reversed its initial ruling:

> [T]he motion in limine is sustained as to all those events pertaining to the after-found marijuana some five or six months after the charges occurring on June 21, 2002. I again renew my statement, [defense counsel], that the information that can be proffered is that information by your client as to statements made at the time of the event, at or near the date of the event, made to his spouse as to his position regarding there being marijuana in or about the premises where he lived at the time.... Obviously, if he does testify it's up to [the prosecutor] to further preserve his objections to that particular type of testimony. Does that clarify the issue for you?

Thus, the court ruled that Defendant <u>could</u> present such testimony if he chose to do so, subject to any objections that might be interposed at that time by the State. (Emphasis in original).

During Defendant's direct examination, he testified that there had been problems between him and Sheena with regard to D.J. Defendant had "a few pretty serious, very heated rounds" with D.J. because he had been smoking marijuana. As of June 21, 2002, there were continuing arguments between Defendant and Sheena with regard to D.J. because she believed his drug use "was a normal thing." Defendant and Sheena were divorced as of the date of trial. All of this testimony was elicited without objection from the State. The record does not reveal any

-13-

further attempts by Defendant to present additional testimony relating to this subject.

A motion in limine simply serves the purpose of alerting opposing counsel and the trial court to potentially objectionable evidence. *Johnson v. State*, 189 S.W.3d 640, 646 (Mo.App. 2006). The court's ruling on a motion in limine is interlocutory and subject to change during the course of trial. *State v. Purlee*, 839 S.W.2d 584, 592 (Mo. banc 1992); *State v. Yole*, 136 S.W.3d 175, 178 (Mo.App. 2004). Therefore, the granting of such a motion before trial presents no reviewable issue on appeal. *State v. Jordan*, 937 S.W.2d 262, 264 (Mo.App. 1996). Instead, the proponent of the evidence must attempt to present the excluded evidence at trial in order to preserve the issue for appellate review. *Purlee*, 839 S.W.2d at 592; *Yole*, 136 S.W.3d at 178; *Jordan*, 937 S.W.2d at 264. "Missouri courts strictly apply these principles based on the notion that trial judges should be given an opportunity to reconsider their prior rulings against the backdrop of the evidence actually adduced and in light of the circumstances that exist when the questioned evidence is actually proffered." *State v. Mickle*, 164 S.W.3d 33, 55 (Mo.App. 2005).

In the case at bar, the trial court did reconsider its initial ruling on the motion in limine. During trial, the court ruled that Defendant could testify about statements he made to his wife, at or near the date of his arrest, regarding his position about there being marijuana in or about the premises where he lived at the time. Defendant simply failed to do so. Accordingly, the disposition of this point is governed by our recent decision in *State v. Miller*, 172 S.W.3d 838 (Mo.App.2005).

In *Miller*, the State filed a motion in limine to exclude all questions, evidence or argument concerning Miller's medical treatment or detention following her arrest. The trial court sustained the motion. *Id.* at 853. Nevertheless, Miller presented testimony and exhibits about her injuries during the trial without objection by the State. On appeal, Miller claimed "the trial court erred by sustaining the State's motion in limine which prevented her from presenting medical evidence of injuries she sustained after being stopped by the officers." *Id.* We held that Miller's point preserved nothing for appellate review:

> [A] motion in limine is interlocutory in nature and, by itself, preserves nothing for appeal. At trial, Appellant testified about her injuries and introduced photos of them. The State did not object to any of this evidence. Although she argues that "she was prohibited from corroborating this testimony and evidence with medical evidence to support her claim," she fails to direct us to any portion of the record, other than the interlocutory order in limine, where she attempted to introduce any additional evidence or made offers of proof about the same. As a result, Appellant has preserved nothing for our review.

*Id.* at 853-54 (citation omitted). We reach the same conclusion here. Defendant's first point is denied.

Lloyd, 205 S.W.3d at 905-06.

The Missouri Court of Appeals did not adjudicate Petitioner's claim on its merits, but instead rested its denial of the claim on state procedural grounds, clearly and expressly stating that the disposition of a motion in limine presented no reviewable issue on appeal, and that the record failed to show that Petitioner attempted unsuccessfully to present the evidence he claims the trial court prevented him from offering. These state procedural grounds are independent of federal law, and adequate to support the judgment. "It is not the office of a federal habeas court to determine that a state court made a mistake of state law." Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). Petitioner offers no evidence, nor does independent research reveal, that Missouri courts fail to regularly follow the rule that rulings on motions in

limine preserve nothing for appellate review.  <u>See</u> <u>State v. Mort</u>, 321 S.W.3d 471, 479 (Mo.Ct.App. 2010) (citing <u>State v. Wright</u>, 934 S.W.2d 575, 581 (Mo.Ct.App. 1996) (A point "premised on the denial of a motion in limine presents nothing for appellate review because a motion in limine ruling is interlocutory in nature and cannot, therefore, by itself, be reversible error"); <u>see</u> <u>also</u> <u>State v.</u> <u>Purlee</u>, 839 S.W.2d 584, 592 (Mo. banc 1992) (same, adding that, to preserve the issue for appellate review, the proponent of the evidence must attempt to present the excluded evidence at trial). Furthermore, as the Missouri Court of Appeals noted, this procedural rule is regularly enforced because it serves the state's interest.  "[T]rial judges should be given an opportunity to reconsider their prior rulings against the backdrop of the evidence actually adduced and in light of the circumstances that exist when the questioned evidence is actually proffered." <u>Lloyd</u>, 205 S.W.3d at 906 (quoting <u>State v. Mickle</u>, 164 S.W.3d 33, 55 (Mo.Ct.App. 2005)).

Because the Missouri Court of Appeals adjudicated the claims Petitioner brings in Grounds 1(a) based upon its interpretation and application of an independent and adequate state procedural rule, this Court may review the claim only if Petitioner demonstrates cause and prejudice, or that he has evidence of his actual innocence and thus a miscarriage of justice will occur should this Court not review his claim.  Petitioner has neither asserted nor shown cause for or prejudice as a result of his

-16-

failure to preserve for appeal the claims he raises in Grounds 1(a). Furthermore, to the extent that Petitioner's statement, in his Amendment, that he is actually innocent may be construed as a request for the Court to consider his defaulted claim under the fundamental miscarriage of justice exception, such an assertion must fail. To raise the fundamental miscarriage of justice exception to the procedural default doctrine, Petitioner must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006); see also Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995). "[ A] claim of 'actual innocence' is ... a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Mansfield v. Dormire, 202 F.3d 1018, 1024 (8th Cir. 2000). To successfully pursue a claim of actual innocence, petitioner must show (1) new reliable evidence not available at trial; and (2) that, more likely than not, no reasonable juror would have convicted petitioner in light of the new evidence. Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001).

In support of his claim of actual innocence here, Petitioner states only that the government used an illegal search to obtain a search warrant to seize marijuana plants found on Petitioner's property. This is certainly not new, inasmuch as Petitioner made this argument in a pre-trial motion, and on direct appeal to the Missouri Court of Appeals. Petitioner therefore

-17-

cannot demonstrate actual innocence, see Id., and his claim in Ground 1(a) is barred from review in this Court.

C.  Ground 4

In Ground 4 of the Petition, Petitioner argues that the trial court erred in denying his motion to suppress evidence obtained during an allegedly illegal search of his property. Petitioner presented this claim on direct appeal.  In denying Petitioner's claim on procedural grounds, specifically stating that it was declining to conduct even plain error review or reach the merits of Petitioner's claim, the Missouri Court of Appeals determined that Petitioner had failed to preserve the point for appellate review, inasmuch as he was challenging the trial court's ruling on his pretrial motion to suppress, not the trial court's ruling admitting the evidence during trial.  Lloyd, 205 S.W.3d at 899-901.  The Missouri Court of Appeals noted that, during the State's presentation of its case, the evidence Petitioner complained of in his pretrial motion to suppress was admitted without objection from Petitioner.  Id. at 899.  More specifically, the Missouri Court of Appeals wrote:

> Defendant's fourth point asserts that the trial court erred in denying the motion to suppress because the warrant was not issued upon adequate probable cause, thereby rendering the search of Defendant's property illegal.  This point is defective because the only ruling it challenges is the court's decision to deny the motion to suppress.  A pretrial ruling on a motion to suppress and the court's later decision to admit evidence at trial are two separate procedures. A trial objection to the admission of evidence challenged in a motion to suppress is required to preserve the issue for appellate review.

-18-

*State v. Williams*, 9 S.W.3d 3, 11 (Mo.App. 1999).[5] Consequently, the ruling on a motion to suppress generally cannot be asserted as a point of error on appeal. *Id.* "[O]rdinarily, a point relied on that refers only to a ruling on such motion is fatally defective." *State v. Shifkowski*, 57 S.W.3d 309, 316 (Mo.App. 2001). This rule attends because such a ruling is interlocutory and subject to change during trial. *Id.* "When a pretrial motion to suppress evidence is denied, the defendant must renew the objection or make a specific objection at trial when the evidence is presented to preserve the issue of appellate review. The trial court must be given the opportunity to reconsider its prior ruling against the backdrop of the evidence adduced at trial." *State v. Morrow*, 996 S.W.2d 679, 681-82 (Mo.App. 1999) (citations omitted). "Accordingly, a point relied on attacking the trial court's ruling on a pretrial motion to suppress, without attacking the court's ruling admitting the evidence, is deficient in that it does not identify the actual ruling that is subject to challenge and, therefore, does not preserve the issue for appellate review." *State v. Wolf*, 91 S.W.3d 636, 642 (Mo.App. 2002).

> [5] The preservation problem was compounded by the fact that Defendant's motion for new trial omitted any reference to the ruling on the motion to suppress or the admission in evidence of the items seized during the search of his farm. To preserve an evidentiary issue for appeal, there must be an objection giving the grounds at the time the evidence is sought to be introduced, and the same objection must be renewed in the motion for new trial. *See State v. Campbell*, 147 S.W.3d 195, 205 (Mo.App. 2004); *Enos v. Ryder Auto. Operations, Inc.*, 73 S.W.3d 784, 788-89 (Mo.App. 2002).

Lloyd, 205 S.W.3d at 900 (footnote in original).

The Missouri Court of Appeals continued, noting that it was declining to review Petitioner's point for plain error because counsel for Petitioner could have, but did not, renew his motion to suppress and obtain a continuing objection to any evidence he claimed had been illegally seized, and instead stated during trial that he had no objections. Id. at 901. The Missouri Court of

-19-

Appeals also noted that, even if it were inclined to review the point on its merits, it could not do so because the trial court, in denying the motion to suppress, reviewed depositions which Petitioner failed to include in the record on appeal, leaving the Missouri Court of Appeals to presume that such evidence was likely unfavorable to Petitioner's claim.  Id. at 900-01, n. 6.

As Respondent correctly notes, Petitioner's claim in Ground 4 is not cognizable in these proceedings.  A Fourth Amendment claim is not cognizable on federal habeas review unless the state fails to provide "an opportunity for full and fair litigation of [the] claim." Palmer v. Clarke, 408 F.3d 423, 437 (8th Cir. 2005) (quoting Stone v. Powell, 428 U.S. 465, 494, (1976)).  A federal court will review a Fourth Amendment claim raised in a habeas petition only if either "the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system."  Id. (quoting Willett v. Lockhart, 37 F.3d 1265, 1273 (8th Cir. 1994) (en banc)).  In the case at bar, Petitioner does not argue that the state failed to provide a procedure through which he could raise his Fourth Amendment claim, nor does the record support such conclusion.  In Petitioner's case, the state provided a procedure for Petitioner to present his Fourth Amendment claim; Petitioner simply failed to follow that procedure, and it cannot be said that Petitioner was thwarted by an "unconscionable breakdown" in the

-20-

system.  See Id.

Even if Petitioner's claim in Ground 4 were cognizable,
it would be procedurally barred from review.  Rather than
adjudicating Petitioner's claim in Ground 4 on its merits, the
Missouri Court of Appeals rested its denial of the claim on state
procedural grounds, clearly and expressly stating that the
disposition of a motion to suppress presents no reviewable issue on
appeal, and that the record failed to show that Petitioner objected
to the introduction of the evidence at trial.  These state
procedural grounds are independent of federal law, and adequate to
support the judgment.  "It is not the office of a federal habeas
court to determine that a state court made a mistake of state law."
Sweet, 125 F.3d at 1151 (citing Estelle, 502 U.S. at 67-68).
Petitioner offers no evidence, nor does independent research
reveal, that Missouri courts fail to regularly follow the rule that
rulings on motions to suppress preserve nothing for appellate
review.  See State v. Smith, 185 S.W.3d 747, 755 (Mo.Ct.App. 2006)
(quoting State v. Shifkowski, 57 S.W.3d 309, 316 (Mo.Ct.App. 2001)
("A trial court's ruling on a motion to suppress is interlocutory
and is subject to change during trial.  'Accordingly, a motion to
suppress, in and of itself, preserves nothing for appeal, and
ordinarily, a point relied on that refers only to a ruling on such
motion is fatally defective'"); see also State v. Allison, 326
S.W.3d 81, 87 (Mo.Ct.App. 2010).  Because the Missouri Court of
Appeals, the last state court to hear Petitioner's claim, rested

-21-

its disposition of the claim upon an independent and adequate state procedural rule, this Court would be precluded from considering it in this habeas action. See <u>Coleman</u>, 501 U.S. 722; <u>Harris</u>, 489 U.S. 255; <u>see</u> <u>also</u> <u>White</u>, 206 F.3d at 780. As discussed above, Petitioner fails to demonstrate cause and prejudice, and also fails to demonstrate actual innocence, such that this Court's failure to address his claims would result in a fundamental miscarriage of justice.

For all of the foregoing reasons, Petitioner's claims in Grounds 1(a) and 4 are barred from review in this Court.

## IV.    <u>Claims Addressed on the Merits</u>

In its published decision denying Petitioner's claims on appeal, the Missouri Court of Appeals summarized the facts of Petitioner's case as follows:

> Defendant and his wife, Sheena Lloyd (Sheena), owned a 180-acre farm in Crawford County, Missouri. They lived in a house on the premises along with Sheena's son, D.J. Sergeant Richard Lisenbe (Lisenbe) worked for the Missouri State Highway Patrol in the marijuana eradication unit. On June 20, 2002, he and other officers went to Defendant's farm. In a forested area behind the barn, officers found a cleared patch containing two cultivated marijuana plants. In another wooded area about two hundred yards from the front entrance to Defendant's house, the officers found a second cleared patch containing 228 cultivated marijuana plants. Lisenbe left Defendant's premises and obtained a warrant to search Defendant's home and outbuildings.

> Defendant and Sheena were at home when the warrant was executed the following day. D.J. had left two or three weeks earlier to spend the summer with his

grandparents. In a red shed about 70 feet from Defendant's house, officers found an indoor marijuana-growing operation. They observed two stacks of bricks with a blanket over the top. Underneath the blanket, there were growth lights suspended over 72 starter pots containing marijuana seeds. A fan was pointed into the growing area to keep it cool. The shed also contained black buckets, potting soil and fertilizer. Just behind this shed, officers located 25 starter marijuana plants in styrofoam cups. In another nearby shed, more plant food and fertilizer were discovered in large white containers. In a small roofless enclosure, officers located more starter plants in styrofoam cups. In Defendant's barn, officers found enough water hoses to reach the large marijuana patch in the woods. From that patch, officers seized 228 plants.[2] Each plant would produce at least one pound of marijuana, which had a street value of around $1,200. The plants appeared to have been placed in holes dug with a post-hole auger and filled with potting soil and fertilizer. A tractor equipped with an auger was located in Defendant's yard. There was a worn patch connecting the house to the large marijuana field. In addition, officers seized the two plants from the smaller marijuana patch from the clearing in the woods behind the barn.

Defendant's two-bedroom residence was searched next. In the bedroom used by Defendant and his wife, officers removed plant food, a used pipe and some seeds or leafy material that appeared to be marijuana. In D.J.'s bedroom, officers removed a marijuana plant, a water pipe and a High Times magazine containing an article titled, "What to Feed Your Weed." In another part of the house, officers seized a bong, rolling papers, a machine to help roll cigarettes, marijuana seeds, a set of portable scales and an electrical box containing a number of breakers that could be used to control circuits running to the outbuildings like the red shed.

Subsequent to the search, Defendant was charged with manufacturing a controlled substance by knowingly growing more than five grams of marijuana. Following Defendant's conviction of this offense, he appealed.

[2] Lisenbe visually identified the plants as marijuana. Nearly all of the plants were burned, but Lisenbe removed 570 grams of leaves from several plants for laboratory

> analysis. The plant matter was confirmed
> to be marijuana by microscopic analysis,
> color testing and thin layer
> chromatography.

Lloyd, 205 S.W.3d at 898-99 (footnote in original).

State court factual findings are presumed to be correct. 28 U.S.C. § 2254(d). State court findings may not be set aside unless they are unsupported by the record. Sumner v. Mata, 449 U.S. 539, 547-49 (1981). Petitioner bears the burden of establishing that the state court's factual determinations are erroneous. Williams v. Armontrout, 912 F.2d 924, 930 (8th Cir. 1990) (en banc). Petitioner herein makes no effort to rebut the foregoing facts with clear and convincing evidence. Having reviewed the record, the undersigned finds that the state court's findings are supported thereby, and are adopted herein to the extent they relate to the claims Petitioner raises herein.

Section 2254(d)(1) permits federal habeas courts to test the determinations of state courts "only against clearly established federal law, as determined by the Supreme Court of the United States," and prohibits the issuance of a writ of habeas corpus unless the state court's decision is "contrary to or involved an unreasonable application of clearly established federal law." Williams v. Taylor, 529 U.S. 362, 379 (2000). A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law, or different than the Court's conclusion on a set

of materially indistinguishable facts.  Id. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001).  A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply.  Carter, 255 F.3d at 592, citing Williams v. Taylor, 529 U.S. at 407.


A.    Grounds 1(b) and 3

    In Ground 1(b), Petitioner complains that the trial court refused to allow him to testify regarding the discovery of marijuana growing at his residence following his arrest.  In Ground 3, Petitioner claims that the trial court erred when it prohibited him from submitting evidence showing that marijuana was being grown on the farm five months after his arrest.  Respondent argues that these claims are meritless.  The undersigned agrees.

    At the time Petitioner's conviction became final, the law was clearly established that the Fourteenth Amendment to the United States Constitution guarantees a criminal defendant the right to due process of law.  U.S. CONST. AMEND. XIV.  Questions regarding the admissibility of testimony and other evidence at trial are matters of state law, and on habeas review, the federal court does not examine whether the evidence was properly admitted under state law. See Estelle, 502 U.S. at 67.  In fact, evidentiary rulings in state trials rarely rise to the level of a federal constitutional violation.  Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000).

-25-

A federal court may grant habeas relief when a state court's evidentiary ruling "infringes upon a specific federal constitutional right or is so grossly or conspicuously prejudicial that it fatally infected the trial and denied the defendant the fundamental fairness that is the essence of due process." Maynard v. Lockhart, 981 F.2d 981, 986 (8th Cir. 1992) (quoting Berrisford v. Wood, 826 F.2d 747, 749 (8th Cir. 1987)). To meet this standard, a petitioner "must show a reasonable probability that the error affected the trial's outcome." Troupe v. Groose, 72 F.3d 75, 76 (8th Cir. 1995); see also Meadows v. Delo, 99 F.3d 280, 283 (8th Cir. 1996).

In the case at bar, the State filed a motion in limine to exclude all evidence related to additional marijuana found at Petitioner's residence following his arrest. Finding all such evidence irrelevant, the trial court sustained the State's motion as to all of the events pertaining to the marijuana discovered at Petitioner's residence following his arrest.[5] At trial, Petitioner presented an offer of proof regarding the evidence he wished to submit. (Resp. Exh. 1 at 103-33). In support, Petitioner named the following people as witnesses: Lauren Hill, Karen Cool, Lori Boucher, Peggy Mansker, Jeremy Cool, and Danny Evans. (Resp. Exh.

---

[5]The motion in limine also sought to exclude evidence regarding Petitioner's problems with his former wife and her son regarding marijuana. Petitioner also raised a claim regarding the state court's adjudication of that element of the motion in limine, which is addressed in this Memorandum and Order.

-26-

1 at 103-33).  The Missouri Court of Appeals summarized the offer

of proof as follows:

> Hill was Defendant's dissolution attorney. Before
> Defendant was released on bond, Sheena obtained an adult
> abuse order of protection against him.  On December 5,
> 2002, Hill informed Defendant that an agreement had been
> reached allowing him to return to the farm. Jeremy
> accompanied Defendant to his farm.  Jeremy climbed into
> the house through one of the windows and opened the door
> from the inside. He and Defendant checked on the house
> and the animals.  The electricity had been turned off,
> and the house had been essentially stripped.  There were
> no appliances in the kitchen, and the cabinets were bare.
> A couch and love seat had been left in the living room,
> but all of the rest of the furnishings were gone.  Jeremy
> testified that he did not see any marijuana plants in the
> house during this trip.  They locked the door and left.
> Defendant returned to the house two or three hours later
> with Jeremy, Karen, Boucher and Evans.  Defendant drove
> alone in one car, and the others followed behind
> Defendant in another vehicle.  Jeremy re-entered the
> house through the window.  In one of the bedrooms, he and
> Evans found a couple of marijuana plants in styrofoam
> [sic] cups.  The plants had been hidden underneath a lamp
> in the back bedroom closet.  The police were called, and
> they came to the house and confiscated the plants.
> Mansker testified that, at around the time of Defendant's
> arrest, she overheard a conversation involving D.J. and
> two other individuals that they had been growing and
> selling marijuana.   D.J. also talked about smoking
> marijuana in Mansker's presence.  Mansker said Defendant
> had not been to his residence since his arrest because of
> the "restraining order" against him.  Karen similarly
> testified that Defendant did not return to his house at
> any time when she was with him.  She admitted, however,
> that she had only known Defendant since August 2002 and
> that she had not been with him 24 hours a day.  Following
> the offer, the court adhered to its earlier ruling that
> the proffered evidence was irrelevant.

> Lloyd, 205 S.W.3d at 901-02.

Following the offer of proof, the trial court ruled

inadmissible all evidence regarding the discovery of marijuana at

Petitioner's residence following his arrest.  On appeal, Petitioner

-27-

argued, as he does in the instant Petition, that the trial court's ruling was erroneous because it prevented him from presenting evidence that a suspect other than himself was responsible for the marijuana growing operation occurring at his residence. However, the Missouri Court of Appeals affirmed Petitioner's conviction and sentence, finding that the evidence Petitioner wished to present was irrelevant, because it failed to clearly prove that someone other than Petitioner was the one responsible for growing marijuana at the residence at the time Petitioner was arrested. In so holding, the Missouri Court of Appeals wrote as follows:

> It is well-settled that "[e]vidence which has no other effect than to cast bare suspicion on another is not admissible." *Helmig v. State*, 42 S.W.3d 658, 671 (Mo.App. 2001). Defendant's proffered evidence was not relevant unless it directly connected a specific person other than Defendant to the crime of manufacturing marijuana on June 21, 2002.

> To be admissible, evidence that another person had an opportunity or motive for committing the crime for which a defendant is being tried must tend to prove that the other person committed some act directly connecting him with the crime. The evidence must be of the kind that directly connects the other person with the <u>corpus</u> <u>delicti</u> and tends clearly to point to someone other than the accused as the guilty person. "Disconnected and remote acts, outside the crime itself cannot be separately proved for such purpose; and evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible." *State v. Rousan*, 961 S.W.2d 831, 848 (Mo. banc 1998) (citations omitted).

When police arrested Defendant, they found a large,

active marijuana-growing operation on the farm. At that time, Sheena was the only other person residing there because D.J. had left several weeks earlier to spend the summer with his grandparents. To be relevant, Defendant's proffer had to directly connect Sheena to the crime of manufacturing marijuana. *See Williams v. State*, 168 S.W.3d 433, 445-46 (Mo. banc 2005) (the evidence must directly connect "some identifiable person" with the charged crime). Defendant failed to do so. All the proffer tended to show was that marijuana plants were found in Defendant's house five months after his arrest. At that time, Sheena was not living there. The house had been stripped, and the electricity had been turned off. Defendant presented nothing to prove when the house became vacant. Indeed, the proffer did not exclude the possibility that Defendant could have secreted the marijuana plants in his own house. The entry of an adult abuse order would not have prevented him from returning home in violation of the order. He did not testify during the offer of proof, and the witnesses who did testify were only able to account for Defendant's whereabouts during the limited times they were with him.[8] While empty, any number of persons-including Defendant-could have gained access to the house through the window, just as Jeremy did when he went there with Defendant. Moreover, Jeremy testified that he saw no marijuana in the house during his first visit there. Defendant was present and knew the house was unoccupied. The second trip to the house did not take place for two or three hours, and Defendant drove there alone in his own car ahead of the other four persons who accompanied him. Thus, Defendant's proffer was irrelevant because it failed to clearly prove that Sheena, rather than Defendant, was manufacturing marijuana on June 21, 2002. *See State v. Wilson*, 105 S.W.3d 576, 583 (Mo.App. 2003); *Felder v. State*, 88 S.W.3d 909, 914 (Mo.App. 2002).

> [8]Defendant later testified during his direct examination that he did not return to the farm from the time he was arrested until the end of November. This testimony was first presented after the offer of proof had concluded and the court had ruled that Defendant's proffer was irrelevant.

Lloyd, 205 S.W.3d at 902-03 (footnote in original).


Having fully reviewed Petitioner's claim in light of the

record, the undersigned does not find that the state court's adjudication of Petitioner's claim infringed upon a specific Constitutional protection, or amounted to a denial of due process. See Clark v. Groose, 16 F.3d 960, 963 (8th Cir. 1994) (The admission of evidence is generally a question of state law that will not form the basis for habeas corpus relief). As the Missouri Court of Appeals noted, none of Petitioner's evidence concerning the discovery of marijuana at his residence following his arrest necessarily connected his wife, or anyone else, to the commission of the crime of which Petitioner was charged. In addition, even assuming arguendo that the trial court's exclusion of the evidence was error, Petitioner herein could not demonstrate a reasonable probability that the error affected the trial's outcome. Troupe, 72 F.3d at 76; see also Meadows, 99 F.3d at 283.

In addition, as the Missouri Court of Appeals noted, Petitioner's witness Douglas Ennis, who had worked on Petitioner's ranch, testified at trial that Petitioner was not involved in any drug activity, was in fact against any drug activity, and had indeed fired him after discovering that he was smoking marijuana. Despite the fact that the State won an objection to Ennis's statement that Petitioner was against drug activity, the jury was not instructed to disregard the testimony, and therefore could have considered it. Ennis's testimony was corroborated by Petitioner's own testimony that he and his wife had argued about marijuana. Because Petitioner was permitted to introduce evidence supporting

-30-

his theory of defense, it cannot be said that the trial court's exclusion of the evidence would have affected the outcome of Petitioner's trial. The Court therefore determines that the claims Petitioner raises in Grounds 1(b) and 3 are meritless.

B.    Ground 2

    In Ground 2 of the petition, Petitioner argues that the prosecutor engaged in "extreme misconduct" that was allowed by the trial court, inasmuch as the prosecutor was allowed to imply that Petitioner committed a crime he did not commit. (Docket No. 1 at page 6). Although the Petition does not specify exactly what comments the prosecutor made, it seems apparent that Petitioner is referring to the prosecutor's comments which were reviewed by the Missouri Court of Appeals for plain error, as noted, infra.

    At the time Petitioner's conviction became final, the law was clearly established that the Fourteenth Amendment to the United States Constitution guarantees a criminal defendant the right to due process of law. U.S. Const. Amend. XIV; Darden v. Wainwright, 477 U.S. 168 (1986). When considering whether the conduct of a prosecuting attorney violates the Fourteenth Amendment's due process guarantee, the relevant question is whether the complained-of conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181. It is insufficient that a prosecutor's remarks were merely

"undesirable or even universally condemned." Id. (citing Donnelly v. DeChristoforo, 416 U.S. 637 (1974)). Improper closing argument violates due process when the argument is so egregious that it renders the entire trial fundamentally unfair. Darden, 477 U.S. at 181.

Because the Missouri Court of Appeals reviewed this claim for plain error only, this Court is limited to plain error review. Hornbuckle v. Groose, 106 F.3d 253, 257 (8th Cir. 1997). Plain error is error which is both obvious and substantial. United States v. Frady, 456 U.S. 152, 163 (1982), (citing United States v. Gerald, 624 F.2d 1291, 1299 (5th Cir. 1980)). Unless the prosecutor's remarks are determined to have had a "decisive effect" on the jury, there is no plain error. Burns v. Gammon, 173 F.3d 1089, 1095 (8th Cir. 1999).

As recited by the Missouri Court of Appeals, the following took place during Petitioner's cross-examination:

> When the prosecutor asked Defendant about his prior convictions, he answered that he had convictions "[y]ears ago when I was a lot younger and stupid, [for] burglary, safe cracking, stealing a yacht-several, counterfeiting money." On further questioning, Defendant also admitted that he had been convicted twice of escape. During a 20-year period, Defendant had spent a total of nine years in prison. During the process of eliciting information from Defendant about how much total time he had been sentenced to serve, the prosecutor asked, "How long were you out there passing counterfeit before they caught you?" Before Defendant could answer, Defense counsel's objection was sustained. Counsel asked for no other relief. At the end of the cross-examination, the prosecutor returned to the subject of Defendant's prior convictions by questioning him about the number of states

in which he had committed crimes. Defendant said he had convictions in three states. On further questioning, however, Defendant admitted that he had been convicted of crimes in Florida, Louisiana, North Carolina and Texas. Defendant denied that he had an Illinois conviction. When the prosecutor asked Defendant if he had a Missouri conviction, defense counsel objected and asked to approach the bench. The prosecutor withdrew the question. Defense counsel requested no additional relief, and Defendant's cross-examination ended.

Lloyd, 205 S.W.3d at 907.

In this case, there is no obvious and substantial error. In denying the part of Petitioner's claim related to the prosecutor's cross-examination of him, the Missouri Court of Appeals noted that Petitioner, testifying on his own behalf, was subject to impeachment like any other witness, and his prior convictions were therefore admissible for impeachment purposes. This is not inconsistent with United States Supreme Court precedent. See Spencer v. Texas, 385 U.S. 554, 561 (1967) (A defendant who takes the stand in his own behalf may be impeached by proof of prior convictions without violation of the Fifth Amendment privilege). Furthermore, as noted above, the Missouri Court of Appeals noted that Petitioner did not respond to two of the cross-examination questions he complained of, and the record demonstrates that the jury was instructed that questions were not evidence, and that they must not assume as true any fact solely because it is included in or suggested by a question asked of a witness. It therefore cannot be said that the prosecutor was allowed to imply that Petitioner committed a crime that he did not commit, or that he had prior

convictions that he did not have. It is presumed that a jury follows instructions, unless there is an overwhelming probability that the jury will be unable to do so, and the effect of the evidence would be devastating to the defendant. Greer v. Miller, 483 U.S. 756, 767 n. 8 (1987). In the case at bar, petitioner does not demonstrate, nor does the record reveal, an overwhelming probability that the jury was unable to follow the instruction, and/or that the effect of the questions was devastating to Petitioner.

The undersigned similarly finds no obvious and substantial error in the Missouri Court of Appeals' decision regarding the prosecutor's statements during closing argument. The Missouri Court of Appeals noted that, during closing argument, the prosecutor encouraged the jury to consider Petitioner's credibility, and in so doing, to remember that Petitioner was a "counterfeiter" and a "safecracker," a "thief," "burglar," and "forger." Lloyd, 205 S.W.3d at 908. The prosecutor also called Petitioner a "greedy man," stated that Petitioner had made money in criminal enterprises before, and concluded that Petitioner had endeavored, via the charged marijuana growing operation, to once again make money in a criminal enterprise. Id. at 908-09. In reviewing Petitioner's claim, the Missouri Court of Appeals wrote that Petitioner had failed to show that the prosecutor's comments had a decisive effect on the jury's verdict, and that the prosecutor was entitled to suggest to the jury Petitioner's motive for manufacturing marijuana,

a legitimate subject.[6]  Id.

In Darden, the Supreme Court addressed the issue of prosecutorial misconduct based upon statements made during closing argument. 477 U.S. 168. There, the prosecutor aggressively denounced the defendant's general character, calling him an "animal" who should not be allowed to leave his cell without being tied to a leash held by a guard. Darden, 477 U.S. at 180-81. The prosecutor also made several offensive comments reflecting an emotional reaction to the case, and suggested to the jury that, unless they imposed a death sentence, the defendant may one day walk free. Id. In holding that these comments did not deprive the petitioner of his constitutional rights, the Supreme Court noted that the prosecutor did not manipulate or misstate the evidence, and further did not implicate other specific rights of the accused, such as the rights guaranteed by the Fifth and Sixth Amendments to the United States Constitution. Id. at 182.

In the case at bar, as in Darden, the prosecutor did not manipulate or misstate the evidence, and did not implicate any of Petitioner's rights. Instead, the prosecutor merely noted petitioner's criminal history, and suggested reasonable inferences

---

[6]The Missouri Court of Appeals also noted that Petitioner had alleged error stemming from the prosecutor's tactic of waving a copy of Petitioner's arrest record in front of the jury. Lloyd, 205 S.W.3d at 909. Noting that the record did not disclose that the prosecutor actually engaged in this behavior, the Missouri Court of Appeals wrote that it was declining to review this allegation. Id. at 909-10. While Petitioner does not mention this behavior in the instant Petition, the undersigned notes, as did the Missouri Court of Appeals, that the record contains no reference to any such behavior on the part of the prosecutor.

for the jury to draw from the record. Neither the prosecutor's statements nor the trial court's decision not to *sua sponte* declare a mistrial "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181. Nor has Petitioner shown that the prosecutor's comments had a "decisive effect" on the jury, or that they implicated any other constitutional right. See Burns, 173 F.3d at 1095. Even assuming, arguendo, that the prosecutor's comments were condemnable, there has been no showing, either in state court or in the instant proceedings, that any of the prosecutor's conduct so tainted the trial proceedings that Petitioner's right to due process was denied. It therefore cannot be said that the trial court erred in failing to direct a mistrial based upon the prosecutor's conduct. The claim raised in Ground 2 of the instant petition is meritless, and does not entitle Petitioner to federal habeas relief.

The decision of the Missouri Court of Appeals was well-based on law and fact, and was not "contrary to" nor involved an "unreasonable application of" clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has Petitioner shown that the state court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). The claims Petitioner raises in Grounds 1(b), 2 and 3 are denied.

For all of the foregoing reasons, Petitioner herein is not

entitled to federal habeas relief. Furthermore, petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." <u>Khaimov v. Crist</u>, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus, the Court will not issue a certificate of appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DISMISSED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue. 28 U.S.C. § 2253.

A separate Judgment shall accompany this Memorandum and Order.

FREDERICK R. BUCKLES
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of March, 2011.